UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| WILLIAM W. YORK, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | No. | 3:17-CV-39-DCLC-DCP |
| | ) | | |
| RANDY LEE, | ) | | |
| | ) | | |
| Respondent. | ) | | |
| | ) | | |

**MEMORANDUM OPINION**

Petitioner William W. York is a prisoner proceeding pro se on a petition for a writ of habeas

corpus under 28 U.S.C. § 2254, in which he challenges the constitutionality of his confinement

under a State-court judgment of conviction for two counts of first-degree murder [Doc. 2]. Having

considered the submissions of the parties, the State-court record, and the law applicable to

Petitioner's claims, the Court finds that the petition should be denied.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts and procedural history of this case have been previously summarized by the

Tennessee Court of Criminal Appeals ("TCCA") as follows:

> On May 30, 1977, William W. York and two others, Clifford T. Caudill and Wes
> Finley, Jr., robbed the Hawkins Jewelry Store in Madison, West Virginia. *State v.
> Caudill*, 170 W.Va. 74, 289 S.E.2d 748, 750 (1982).
>
> > The proprietors of the store, Aubrey and Alberta Hawkins, were held
> > at gunpoint during the robbery by Caudill and York. Finley waited
> > in [Caudill's] car in an alley behind the jewelry store.
> >
> > After robbing the store, Caudill and York forced Mr. and Mrs.
> > Hawkins to accompany them as they fled. They put Mr. and Mrs.
> > Hawkins in the back seat of [Caudill's] car and left Madison on a
> > highway known as Corridor G. Shortly thereafter the Hawkins were

placed in the trunk of the car and held captive. On June 3, 1977, they were found dead near Jellico, Tennessee.

*Id.* In West Virginia, York was convicted of armed robbery and two counts of kidnapping. In Tennessee, as part of a plea agreement, York pled guilty to two counts of first[-]degree murder for which he received two concurrent life sentences.

York began serving his sentence with the Tennessee Department of Correction in 1989. Since that time, York has unsuccessfully sought release on parole. In each instance, York has resorted to the courts to challenge the statutory and regulatory scheme for determining parole eligibility.

York became eligible for parole consideration in July 2001. *York v. Tenn. Bd. of Prob. and Parole*, No. M2003–00822–COA–R3–CV, 2004 WL 305791, at *1 (Tenn. Ct. App. Feb. 17, 2004) (hereinafter "*York I*"). The Tennessee Board of Probation and Parole (the "Board") denied parole. York appealed, arguing due process, equal protection, and ex post facto violations. *Id.* This Court affirmed the Board's denial of parole based on the seriousness of the offense. *Id.* at *3. However, we concluded that the Board's deferral of parole consideration for ten years was arbitrary and remanded for reconsideration of York's next parole review date. *Id.* at *4.

On remand, the trial court directed the Board to hold a hearing to set a new parole review date. *York v. Tenn. Bd. of Prob. and Parole*, M2005–01488–COA–R3–CV, 2007 WL 1541360, at *1 (Tenn. Ct. App. May 25, 2007) (hereinafter "*York II*"). On January 4, 2005, the Board conducted the ordered hearing, but rather than only scheduling a new parole review date, the Board again denied York parole based on the seriousness of his offense. *Id.* The Board set a new parole hearing for January 2011. *Id.*

In his appeal from the January 4, 2005 review hearing, York again argued that "the existing statutory and regulatory scheme denied him equal protection and due process and further constituted a violation of the Ex Post Facto Clause" and that denial of parole "based solely upon the 'seriousness of the crime'" was unconstitutional. *Id.* at *2. We made short work of those arguments, noting that they had been addressed and rejected in the prior appeal. *Id.* We also concluded that the Board's decision to defer parole consideration for six years was appropriate but modified the judgment such that the six-year period would run from York's parole hearing in July 2001. *Id.* at *6.

In January 2008, York again came before the Board, and again the Board denied parole based solely on the seriousness of the offense. *York v. Tenn. Bd. of Prob. and Parole*, No. 3:08–CV–1093, 2010 WL 3522330, at *1 (M.D. Tenn. Aug. 12, 2010). York responded by asserting a claim under 42 U.S.C. § 1983 in federal court. *Id.* at *5. Specifically, York alleged that,

"In denying [him] parole on January 7, 2008, the Tennessee Board
of Probation and Parole retroactively used current parole laws,
policies, and practices that were different from those in effect when
[he] committed his crimes in June 1977; and the effect of these
changes, individually and cumulatively, created a harsher
substantive standard for parole creating a sufficient risk of increased
punishment to violate the *Ex Post Facto Clause* of the United States
Constitution, Article 1 Section 10."

*Id.* at *1. The Board moved for summary judgment, and a magistrate judge
recommended the motion be granted. *Id.* Based on the record, the magistrate judge
found that York had "failed to demonstrate that the 2008 parole laws, policies, or
practices 'alter[ed] the definition of criminal conduct or increase[d] the penalty by
which a crime is punishable.'" *Id.* at *7 (citation omitted). The court ultimately
adopted the recommendation and dismissed York's case. *York v. Tenn. Bd. of Prob.
and Parole*, No. 3–08–1093, 2010 WL 3522328, at *1 (M.D. Tenn. Sept. 3, 2010).

York last appeared for a parole review hearing on July 1, 2013. The Board denied
York parole because "release from custody . . . would depreciate the seriousness of
the crime of which the offender stands convicted or promote disrespect of the law."

On October 22, 2013, York filed a petition for writ of certiorari with the Davidson
County Chancery Court. The Board did not oppose the issuance of the writ, and the
court ordered that the record from the July 1, 2013 parole review hearing be
prepared and filed.

In accordance with local rule, York filed a brief, and the Board filed a responsive
brief. The Board appended to its responsive brief an affidavit of a long-time
member of the Board, Charles Traughber, which had previously been filed in
York's federal case. Shortly after the Board filed its responsive brief, York filed
interrogatories and requests for document production directed to the Board. Over
thirty days later, apparently having failed to receive any responses to his discovery,
York filed a motion to compel. In response to the motion, the Board argued that,
briefs having been filed, "the discovery process [wa]s moot." The Board also
argued "the scope of review on a writ of certiorari is very narrow and discovery is
not a normal part of the process."

Ultimately, the court denied the motion to compel and dismissed York's petition.
On appeal, York argues that the application of the "seriousness of the crime"
standard and certain victims' rights are ex post facto violations. York further argues
that the trial court erred in considering the affidavit of Mr. Traughber and in not
permitting discovery.

*York v. Tennessee Bd. of Parole*, 502 S.W.3d 783, 786-88 (Tenn. Ct. App. 2016) ("*York IV*"),

*perm. app. denied* (Aug. 18, 2016) (footnotes omitted). On appeal, the TCCA affirmed the denial

of parole, and the Tennessee Supreme Court denied Petitioner's application for permission to appeal [Doc. 9-7].

In his federal habeas petition, Petitioner again challenges his denial of parole based on "statutes and standards that were not in effect at the time of [his] offense" that have been retroactively applied to him in a manner that presents "a significant risk of increasing his length of incarceration" [Doc. 2 p. 11]. Respondent filed an answer to the petition, to which Petitioner replied [Docs. 9 & 11]. The Court then granted Respondent's request to file a sur-reply, which Respondent subsequently filed [Doc. 14 & Doc. 15]. Thereafter, Petitioner responded to the sur-reply [Doc. 18].

## II.    STANDARD OF REVIEW

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the

decision is merely incorrect.  *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11.  This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim).  A procedural default exists in two circumstances:  (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal.  *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991).  A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice.  *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977).  "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the State's procedural rules, or that his trial counsel rendered ineffective assistance.  *See id*. at 753.  Additionally, the prejudice demonstrated to overcome the default must

be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## III.   DISCUSSION

Petitioner's asserts that the Board of Probation and Parole ("the Board") violated the *ex post facto* provisions of the Constitution by applying parole statutes and review standards at his parole hearing that were not in effect at the time of his conviction; namely, the Board's practice to require service of longer prison terms for offenders convicted of first-degree murder where the victims' families oppose parole [Doc. 2 p. 12-19]. He argues that retroactive application of this standard has resulted in a significant risk of increased punishment for him, as the Board has considered the opposition of the victims' families to deny him parole [*Id.*].

The United States Constitution prohibits states from enacting an *ex post facto* law. U.S. Const. art. I, § 10, cl. 1. The prohibition "bar[s] enactments which, by retroactive operation, increase the punishment for a crime." *Garner v. Jones*, 529 U.S. 244, 249 (2000). It is a protection "intended to secure substantial personal rights against arbitrary and oppressive legislation . . . and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Beazell v. Ohio*, 269 U.S. 167, 171 (1925) (citations omitted). Procedural changes to a law, even if disadvantageous to a defendant, are not *ex post facto* violations. *See Dobbert v. Florida*, 432 U.S. 282, 293 (1977). Rather, in determining whether the retroactive changes to

parole laws create an *ex post facto* violation, the relevant inquiry is whether the retroactive application of the rules and statutes creates a "sufficient risk of increasing the measure of punishment attached to the covered crimes." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995).

In considering Petitioner's claim, the TCCA noted that "since 1998, victims or their families, if the victim is deceased, have the right to attend and be heard at parole hearings." *York IV*, 502 S.W.3d at 791-92. The TCCA noted that when Petitioner committed his crime in 1977, the Board welcomed testimony and written statements at parole hearings. *Id.* at 792. It found that the subsequent changes to Tennessee's statutory and constitutional law guaranteeing victim's rights constituted a procedural change that posed "an insignificant risk to increased punishment," because the changes had "no impact on the standards for determining suitability for parole, whose application is a matter of discretion vested in the Board." *Id.* at 793. Therefore, the TCCA determined that the challenged victim's rights provisions did not constitute an *ex post facto* violation. *Id.*

As noted by the TCCA, in 1977, victims and their families were permitted to be present at parole hearings, and the Board was permitted to consider their statements. *Id.* Changes to the law elevating the rights of victims did not increase Petitioner's punishment, nor did they affect the criteria used in determining whether to grant parole. Inasmuch as the Board had retained the discretion to decide whether to grant parole since 1977, "from the time [Petitioner] committed [his] offenses, there was always the possibility that the Board would exercise its discretion in a way that would result in fewer paroles and longer prison terms." *Foster v. Booker*, 595 F.3d 353, 362 (6th Cir. 2010). While the changes in the law might make it more difficult for Petitioner to obtain parole, "cumulative changes in parole laws that have 'made it more difficult for [a petitioner] to secure release on parole' are insufficient to demonstrate an *ex post facto* violation."

*McDermott v. Mohr*, No. 1:14-cv-1498, 2015 WL 236276, at \*3 (N.D. Ohio Jan. 16, 2016) (quoting *Foster*, 595 F.3d at 364); *see also United States v. Eberhard*, 525 F.3d 175, 178 (2nd Cir. 2008) ("A law requiring that victims be reasonably heard (if they request) after the defendant has already been convicted does not implicate the *Ex Post Facto* [C]lause."); *Creel v. Kyle*, 42 F.3d 955, 958 (5th Cir. 1995) ("[Petitioner's] claim that notification of victims of his impending parole review violated his rights under the *Ex Post Facto* Clause is frivolous.")).

In sum, the Court finds that Petitioner has not met his burden of demonstrating that he is entitled to relief on this claim.[1] That is, he has failed to demonstrate that the rejection of this claim is contrary to or involves an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of facts in light of the evidence presented to the State courts. Accordingly, Petitioner's claim will be dismissed.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason

---

[1]     The Court notes that attached to Petitioner's federal habeas petition are numerous documents, including newspaper articles and affidavits, that were not presented in State-court proceedings [*See* Doc. 2 p. 22-96]. Therefore, the evidence is not properly before this Court for review. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits"). Accordingly, this Court did not consider the attached evidence in its analysis of Petitioner's claim.

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V.    CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition [Doc. 2] will be **DENIED**, and this action will be **DISMISSED**.   A COA from this decision will be **DENIED**.

The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on any subsequent appeal. *See* Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED:**

s/Clifton L. Corker
UNITED STATES DISTRICT JUDGE